*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0837**

State of Minnesota,
Respondent,

vs.

David Powers,
Appellant.

**Filed April 22, 2024
Affirmed
Worke, Judge
Concurring specially, Gaïtas, Judge
Concurring and concurring specially, Frisch, Judge**

Washington County District Court
File No. 82-CR-23-1493

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kevin M. Magnuson, Washington County Attorney, Andrew T. Jackola, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Daniel P. Repka, Repka Law, LLC, St. Paul, Minnesota (for appellant)

Considered and decided by Frisch, Presiding Judge; Worke, Judge; and Gaïtas, Judge.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

Appellant argues that the district court abused its discretion by granting the state's motion to increase his unconditional bail. We affirm.

# FACTS

On May 3, 2023, respondent State of Minnesota charged appellant David Powers with first-degree criminal sexual conduct, kidnapping, and domestic assault by strangulation. The complaint alleged that Powers prevented C.M. from leaving her apartment and assaulted her several times over the course of two days.

At his initial appearance, the district court issued an order setting conditions for Powers's release. The district court set unconditional bail at $500,000 and conditional bail at $300,000. McLeod County, a different county, then issued a warrant for Powers for his failure to appear in another case. That same day, Powers stated in a recorded phone call from jail that he "will get the people responsible for this." On May 7, Powers posted unconditional bail but was not released due to the outstanding McLeod County warrant.

The following day, the state moved to increase bail based on Powers's statement on the jail phone. In its motion, the state argued that Powers's recorded statement "threaten[ed] the safety of the victim, witnesses, and anyone [Powers] deems responsible for his charges." The state requested that Powers's bail be increased to $1,500,000 unconditional bail and $1,000,000 conditional bail, pursuant to Minn. R. Crim. P. 6.02.

Later that day, the district court held a hearing on the state's motion. The state argued that the district court could consider Powers's jail-phone statement because (1) it related to "the public safety and safety of the victims," (2) it related to the severity of the allegations in the complaint, and (3) the district court did not have this information when it originally set bail. To allow Powers's newly retained attorney to argue on his behalf, the district court did not hear argument from Powers and rescheduled the hearing for the next

2

morning. The district court then increased unconditional bail to $1,000,000 "to make sure [Powers would] not [be] released" before the hearing. Because Powers had already posted $500,000, the district court clarified that if Powers "comes up with additional $500,000 overnight, then he would be on that unconditional bail amount for the $1,000,000." However, the district court also noted that, in any case, Powers was not being released due to the hold-without-bail warrant from another county.

Later that same day, Powers filed a motion to "reinstate bail as previously ordered." Powers argued that the state's motion to increase bail was improper because he posted unconditional bail on May 7, prior to the state's motion. Powers contended that Minn. R. Crim. P. 6.02 provides that his posting of bail divested the court of its authority to reconsider bail unless he failed to appear for a hearing. And because Powers had not failed to appear, he argued that the district court must reinstate its initial bail.

The second hearing was held on May 9. The state argued that its motion was proper because rule 6.02, subdivision 4, authorized the district court to reconsider bail based on the request of either party. The state further argued that Powers's alleged charges were severe, he was a flight risk, he had previously been convicted for similar crimes, and he posed a high risk to the victim's safety. The district court denied Powers's motion, reasoning that rule 6.02, subdivision 4, authorized it to increase Powers's bail. Accordingly, the district court set unconditional bail at $1,000,000 and set conditional bail at $500,000. It further noted that if Powers wanted to be released on unconditional bail, he would need to post an additional $500,000.

This appeal followed.

**DECISION**

Powers argues that the district court abused its discretion by granting the state's motion to increase bail. "The amount of bail to be fixed in a particular case rests within the discretion of the [district] court and its determination will not be reversed unless there is a clear abuse of that discretion." *State v. Huber*, 148 N.W.2d 137, 140 (Minn. 1967).

Powers does not raise a constitutional challenge as to the imposition of excessive bail. *See* Minn. Const. art. 1, § 5 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."). As a result, our review is limited to whether rule 6.02, subdivision 4, authorizes district courts to increase unconditional bail, and not to the amount of that bail. Instead, Powers's challenges relate to the district court's authority under Minn. R. Crim. P. 6.02, which governs the procedure for determining pretrial-release conditions. The rule, in relevant part, provides:

> **Subd. 1.** Conditions of Release. A person charged with an offense must be released without bail when ordered by the prosecutor, court, or any person designated by the court to perform that function. On appearance before the court, a person must be released on personal recognizance or an unsecured appearance bond unless a court determines that release will endanger the public safety or will not reasonably assure the defendant's appearance. When this determination is made, the court must, either in lieu of or in addition to the above methods of release, impose the first of the following conditions of release that will reasonably assure the person's appearance as ordered, or, if no single condition gives that assurance, any combination of the following conditions:
> (a) Place the defendant under the supervision of a person who, or organization that, agrees to supervise;
> (b) Place restrictions on travel, association, or residence during release;
> (c) Require an appearance bond, cash deposit, or other security; or

(d) Impose other conditions necessary to assure appearance as ordered.

. . . .

The court must set money bail without other conditions on which the defendant may be released by posting cash or sureties.

. . . .

**Subd. 4.** Review of Release Conditions. The court must review conditions of release on request of any party.

Minn. R. Crim. P. 6.02.

The interpretation of a rule of criminal procedure presents a question of law that we review de novo. *State v. Myhre*, 875 N.W.2d 799, 803 (Minn. 2016). "[W]hen interpreting a rule, we look first to the plain language of the rule and its purpose." *State v. Gray*, 987 N.W.2d 563, 566 (Minn. 2023) (quoting *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014)). When "the language is plain and unambiguous, that plain language must be followed." *State v. Dahlin*, 753 N.W.2d 300, 305 (Minn. 2008). We read rules as a whole and interpret each section "in light of the surrounding sections to avoid conflicting interpretations." *See id.* at 306 (quotation omitted). We construe "[w]ords and phrases . . . according to rules of grammar and according to their common and approved usage." *Gray*, 987 N.W.2d at 566 (quoting *Welscher v. Myhre*, 42 N.W.2d 311, 314 (Minn. 1950)).

Powers argues that the text of the rule does not allow a change to unconditional bail after it has been posted, and that unconditional bail is not a condition of release. We address each argument in turn.

First, Powers contends that the district court erred by determining that Minn. R. Crim. P. 6.02. subd. 4, authorized it to increase his unconditional bail after he posted it.

5

*See* Minn. R. Crim. P. 6.02, subd. 4 ("The court must review conditions of release on request of any party."). We disagree.

The plain and unambiguous language of subdivision 4 mandates district courts to review conditions of bail on request of either party. Minn. R. Crim. P. 6.02, subd. 4; *see* Minn. Stat. § 654.44, subd. 15a (2022) (providing that "[m]ust" is mandatory). There is no language in subdivision 4 that limits a district court's exercise of this authority. And the Minnesota Supreme Court has underscored that "[t]he amount of bail to be fixed in a particular case rests within the discretion of the [district] court." *Huber*, 148 N.W.2d at 140. As a result, implied in the language of subdivision 4 is the authority of a district court to modify the conditions of bail, in accordance with the purposes of bail, upon request of either party when new information is available. Indeed, the rule would likewise authorize a district court to decrease bail upon a change in circumstances. Absent any language or caselaw limiting the district court's ability to review conditions of release, the district court did not err by determining that subdivision 4 implicitly authorized it to modify Powers's unconditional bail after his statements on the jail phone.

Second, Powers argues that the amount of unconditional bail does not constitute a "condition of release" that a district court can review under subdivision 4. Powers contends that the only "conditions of release" that are reviewable under subdivision 4 are the four conditions specifically outlined in subdivision 1(a)-(d). He argues that the "money bail" requirement, found at the end of subdivision 1, is not a "condition of release" that a district court can review pursuant to subdivision 4. We disagree.

6

A reading of the rule as a whole indicates that the amount of unconditional bail is a "condition of release" reviewable under subdivision 4.  *See Dahlin*, 753 N.W.2d at 306.  First, subdivision 1 is titled "Conditions of Release" and includes descriptions of conditional and unconditional bail.  Minn. R. Crim. P. 6.02, subd. 1.  The placement of the review provision in subdivision 4 at the end of the rule indicates that it applies to all conditions of release described throughout the rule.  *See Dahlin*, 753 N.W.2d at 306.  And as the state argues, because no definite article precedes "conditions of release" in subdivision 4, the rule grants district courts the authority to review any and all conditions of release.

Moreover, the plain language of the rule indicates that the amount of unconditional bail is a "condition of release."  *See Gray*, 987 N.W.2d at 566.  Although Powers appears to suggest that unconditional bail has no conditions for release because it is "unconditional," the parties agree that the term "unconditional bail" is a misnomer because all bail is subject to at least two conditions—payment of the amount and attendance at future proceedings.  The rule itself does not use the term "unconditional bail"; it is shorthand adopted by the court and practitioners.  Subdivision 1 provides that "[t]he court must set money bail without other conditions" which indicates that money bail is itself a condition.  It then states that the defendant may be released only by "posting cash or sureties" and "[t]he defendant's release must be conditioned on appearance at all future court proceedings."  Minn. R. Crim. P. 6.02, subd. 1.  The posting of cash or sureties is therefore a condition of release, just like any others the court imposes.  Thus, subdivision 4 authorizes a district court to review the amount of "unconditional bail" as a condition of

7

release under subdivision 1, and the district court did not abuse its discretion by increasing Powers's bail.[1]

**Affirmed.**

---

[1] At the first hearing, the district court noted that it was increasing bail "to make sure [Powers would] not [be] released" before the bail hearing the next day. Though Powers does not challenge this comment, we note that holding a defendant in jail is not a recognized purpose of bail. *See State v. LeDoux*, 770 N.W.2d 504, 511 (Minn. 2009) (providing that the "general purpose of bail is to permit a defendant's release pending trial if his appearance at trial can be otherwise guaranteed"). However, our review of the record indicates that, in making this comment, the district court was primarily concerned with (1) ensuring that Powers appeared at the hearing the next day, which the district court continued to allow Powers's new attorney to appear and argue on his behalf, and (2) the high risk to public safety and to C.M. that Powers posed, which was further underscored by his comment on the jail phone. Ensuring a defendant's appearance at future proceedings is a purpose of bail, *see id.*, and district courts may consider public safety when determining conditions of bail. *See State v. Martin*, 743 N.W.2d 261, 266 (Minn. 2008) (stating that public-safety concerns are properly considered when determining whether conditioned release will assure a defendant's future court appearances). Moreover, we read the district court's comment about keeping Powers in jail to indicate the district court's acknowledgment that even though it continued the hearing, it was required to review the conditions of bail upon the request of the state at the hearing the next morning. *See* Minn. R. Crim. P. 6.02, subd. 4 ("The court must review conditions of release on request of any party."). Thus, in this specific factual scenario and absent any challenge from Powers, this statement does not render the ultimate decision to increase bail an abuse of discretion.

**GAÏTAS**, Judge (concurring specially)

I agree with the court's decision to affirm the district court's bail increase given the issues that Powers raises on appeal. But I write separately to emphasize that a district court's discretion to increase bail is not unlimited and to note my concerns about what happened in this case.

Preliminarily, there are several limitations on the scope of a district court's authority in setting bail. Under the Minnesota Constitution, bail is an absolute right in all cases. *State v. LeDoux*, 770 N.W.2d 504, 511 (Minn. 2009); *see also* Minn. Const. art. I, § 7 ("All persons before conviction shall be bailable by sufficient sureties . . . ."). The constitutional right to bail restricts the government's power to detain an accused before trial. *State v. Brooks*, 604 N.W.2d 345, 350 (Minn. 2000). Bail is intended to ensure an accused's appearance in court. *Id.* However, the constitutional right to bail is a right of "the accused rather than the courts." *Id.*

In addition to the constitutional guarantee of bail, an accused has a limited procedural due-process right during a bail hearing. Procedural due process requires that a criminal defendant have an opportunity to be heard "at a meaningful time in a meaningful manner." *LeDoux*, 770 N.W.2d at 514 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). An accused in Minnesota has a procedural due-process right to call a witness at a bail hearing "if the [accused] makes a persuasive offer of proof that the witness's testimony, when considered in the context of all other relevant available information, will lead to either release without bail or a reduction in the bail amount . . . that would result in the defendant's release." *LeDoux*, 770 N.W.2d at 514. The Minnesota Supreme Court has

not considered whether the procedural due-process right requires that an accused be afforded other process at a bail hearing.

Apart from these constitutional protections, the Minnesota Rules of Criminal Procedure establish guidelines for a district court to follow in setting bail. *See* Minn. R. Crim. P. 6.02. A district court has discretion regarding the amount of bail and any conditions of release. *State v. Martin*, 743 N.W.2d 261, 265-66 (Minn. 2008). This discretion is not unfettered, however. A district court abuses its discretion if it uses a high bail to force an accused to accept conditional release. *See id.* at 267 (reversing and remanding the district court's bail decision to the district court because "the record indicates that the district court set bail as it did solely to encourage Martin to accept conditioned release"). And a district court may abuse its discretion by imposing conditions that do not correspond to the nature and circumstances of the offense charged. *See id.* (observing that the question of whether the district court abused its discretion in requiring the accused to submit to drug tests as a condition of release was "close" under the circumstances).

I agree with the opinion of the court that the district court had discretion under rule 6.02 to reconsider the initial bail decision. But a district court's bail decisions must still comply with constitutional protections and must be an appropriate exercise of that discretion. These principles create guardrails around a district court's bail decisions.

Here, Powers did not argue on appeal that the district court's bail decision went beyond the bounds of those guardrails. He did not contend that the district court's bail decision violated his constitutional rights. Nor did Powers argue that the district court

abused its discretion by (1) revisiting another judge's bail decision after Powers had posted bail, (2) increasing bail based on the ambiguous "threat" alleged by the state, or (3) tripling bail to ensure that Powers would not be released. Rather, Powers's arguments on appeal concern only whether the district court violated rule 6.02. He argues that the district court did not have authority under rule 6.02 to reconsider the earlier bail decision and that the district court's decision to increase bail was not a condition to "reasonably assure [his] appearance" as required by the rule.

Notwithstanding Powers's decision about how to frame his appellate arguments, I have some concern about what happened here. I am concerned about the state's decision to seek a new bail from a different judge after Powers had posted the bail set at his first appearance. I am concerned that the state offered the "threat" made by Powers to "get the people responsible for this" without any context. I am concerned about the district court's statement that it increased bail before Powers's retained counsel could be present at a bail hearing "to make sure [Powers would] not [be] released." And I am concerned about the district court's decision to triple Powers's unconditional bail and conditional bail amounts based solely on Powers's ambiguous "threat."

Public safety is a valid concern for a district court in setting conditions of release. *Martin*, 743 N.W.2d at 266. Cases involving allegations of intimate-partner violence can be volatile, unpredictable, and frightening. In these cases, determining the appropriate amount of bail and selecting conditions that will serve public safety is no easy task for a district court judge, who often must make these decisions quickly and with limited

information.  However, district courts must remain mindful of the legal guardrails to protect the rights of the accused and the fairness of the process.

**FRISCH**, Judge (concurring and concurring specially)

I join the opinion of the court. I also join the special concurrence of Judge Gaïtas, as I agree that there are limits to the exercise of discretion in setting bail and share the expressed concerns about the circumstances presented by this matter.